IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **RONNIE GIST, individually and on behalf of others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | Case No. 3:10-mc-0095 |
| | ) | Judge Trauger |
| **PILOT TRAVEL CENTERS, LLC,** | ) ) ) | Related: E.D. Ky Case No. 5:08-CV-293-KKC |
| **Defendant.** | ) ) | |

## MEMORANDUM AND ORDER

Pending before the court is a Motion to Compel (Docket No. 1) filed by the plaintiff, Ronnie Gist, to which third-party Fleet One, LLC ("Fleet One") has filed a response (Docket No. 8), and the plaintiff has filed a reply in support (Docket No. 11). For the reasons discussed herein, this motion will be granted in part and denied in part.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2007, plaintiff Gist "purchased diesel fuel and refrigerant" from defendant Pilot Travel Centers, LLC's ("Pilot's") store in Georgetown, Kentucky (the "Store") using his Fleet One credit card. (Docket No. 11 at 2.) Gist alleges that, at the completion of his transaction, he received a receipt that contained the "full account number of his Fleet One credit card," in violation of the Fair and Accurate Credit Transaction Act (FACTA), 15 U.S.C. § 1681c(g), which prohibits displaying more than five digits. (*Id.*)

In June 2008, Gist filed a putative class action lawsuit in the Eastern District of Kentucky

1

"on behalf of himself and all other consumers to whom Pilot provided an electronically printed receipt at the point of sale or transaction at [the Store] and/or other locations in the United States, on which Pilot printed more than the last five digits of the consumer's credit and/or debit card number." (*Id.*) The plaintiff's case is still pending, and he maintains that discovery has supported his claim that Pilot "willfully" violated federal law. (*Id.* at 2-3.) Additionally, presiding Judge Karen Caldwell has determined that only individuals, not business entities, could bring a claim under the FACTA provision at issue. (Docket No. 8 Ex 2 at 4.)

Fleet One offers "fleet card services to fleets (of cars and trucks) and merchant support services to truck stops." (Docket No. 8 at 2.) The plaintiff, who operated a commercial truck, is a "former fleet customer of Fleet One," and Pilot is "Fleet One's largest merchant customer." (*Id.*) In addition to being a merchant customer, Pilot also competes with Fleet One in the "fuel card market" for "fleet customers" to use their "fleet card services." (*Id.*)

On June 24, 2010, the plaintiff issued a subpoena *duces tecum* to Fleet One, serving the subpoena by overnight Federal Express delivery on June 25, 2010. (Docket No. 1 at 1.) The subpoena sought "deposition testimony from a corporate representative on three issues: (1) Fleet One's record retention policy; (2) Fleet One's storage of electronic information pertaining to any and all transactions between Fleet card users and [the Store]. . . and (3) all circumstances surrounding Fleet One's posting of transactions which occurred during the week of June 24, 2007 through June 30, 2007." (*Id.* at 2.) In an effort to locate other class members, the subpoena also sought "any and all receipts, whether in paper or electronic format, regarding transactions of any and all companies purchasing any type of products from [the Store] from June 24, 2007

2

through June 30, 2007." (*Id.*)

On July 1, 2010, Fleet One responded by serving an "Objection to Subpoena" on plaintiff's counsel, asserting a series of objections to both the proposed deposition and the document request, including that the subpoena's requirement that a Fleet One corporate representative appear for deposition and produce documents on July 1, 2010 (just a few days after the subpoena was served) was unreasonable. (*Id.* at 2.) On July 12, 2010, after the parties were unable to resolve their dispute over the validity and scope of the subpoena, the plaintiff filed the Motion to Compel in this court.

The motion was referred to the Magistrate Judge and was fully briefed. On August 23, 2011, Judge Caldwell entered a Show Cause Order requiring Gist to demonstrate why the putative class action should not be dismissed in light of several months of inactivity in the case. (Docket No. 12 Ex. A.) The plaintiff has since indicated that he cannot move forward with the underlying litigation until the Motion to Compel is resolved, and this court has withdrawn the referral in an effort to resolve this motion expeditiously. (Docket No. 13.)

## ANALYSIS

I.  **Motion to Compel**

   A.  **Basic Law**

Under Federal Rule of Civil Procedure 26(b)(1), parties may generally "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Discovery may be freely obtained from non-

3

parties, and such discovery from non-parties is often obtained through the use of a subpoena under Fed. R. Civ. P. 45. A party may move to compel discovery from a non-party under Fed. R. Civ. P. 37, as Gist has done here. *Allen v. Howmedica Leibinger*, 190 F.R.D. 518, 521 (W.D. Tenn. 1999).

Federal Rule of Civil Procedure 45(c) offers protections to "a person subject to a subpoena." The rule permits a court to "quash or modify" when, by its request, the subpoena requires disclosing a "trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(c)(3)(B)(I). Even if the subpoena requires the disclosure of this information, the court may still order the material disclosed under "specified conditions," if the party seeking the discovery "shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and ensures that the subpoenaed person will be reasonably compensated." Fed. R. Civ. P. 45(c)(3)(C).

B.   **The Parties' Arguments**

In his brief motion, the plaintiff attempts to anticipate Fleet One's objections, arguing that, while the subpoena was not "personally" served, it was still properly served on a non-party under Fed. R. Civ. P. 37 and 45 and the case law interpreting those rules.[1] (Docket No. 1 at 2-4.)

---

[1] In its response, Fleet One does argue that the lack of personal service, combined with the lack of included mileage fees and the limited time for compliance offered by the subpoena, render it "defective." (Docket No. 8 at 14-16.) Clearly, the initial concerns about a "rush to comply" imposed by the subpoena have waned, and the court would not be advancing the interests of justice if it, in essence, voided the subpoena on the readily curable "mileage fee" issue. As to the personal service issue, there does appear to be a split of authority, with some courts requiring personal service of a Rule 45 subpoena to a non-party and other courts finding that personal service is not required. *Compare e.g. e-Merging Market Technologies, LLC v. ELK Automotive Components*, 2011 WL 3440470, *2 (E.D. Mich. Aug. 8, 2011) with *Hall v. Sullivan*,

4

Moreover, the plaintiff maintains that he is willing to work with Fleet One to find a mutually agreeable time and place for the deposition and document production and that, to the extent Fleet One has any concerns about releasing "confidential and commercially sensitive" information, those concerns can be easily addressed with a protective order. (*Id.* at 4.)

In response, Fleet One maintains that the provisions of Rule 45 that protect against the "unnecessary disclosure of confidential information" dictate that the Motion to Compel should be denied.[2] (Docket No. 8 at 5.). That is, the "records related to transactions between Fleet One's customers and [the Store] . . . contain a lot of commercially sensitive, confidential information," including "customer names, account names, PIN codes, and other information."

---

229 F.R.D. 501, 506 (D. Md. 2005); *OceanFirst Bank v. Hartford Fire Ins. Co.*, 2011 WL 1641976, *2 (E.D. Mich May 2, 2011)(noting justifications for allowing service by "alternate means" and that Rule 45 does not dictate a method of delivery). Simply put, the law is in a state of flux on this point, and there does not appear to be any binding Sixth Circuit law. However, in circumstances where the service of the subpoena was not personal or other procedural requirements of Rule 45 were arguably not met, but the party did actually receive the subpoena in a timely fashion and was not prejudiced by the method of service, it is appropriate for the court to overlook any technical deficiencies and explore the merits of the discovery request. *See e.g. Powell v. Time Warner Cable*, 2010 WL 5464895, *3 (S.D. Ohio Dec. 30, 2010); *Hendricks v. Total Quality Logistics*, 2011 WL 1791094, *1 (S.D. Ohio May 6, 2011). The court will take that approach here.

[2] In an argument that can be easily rejected, Fleet One maintains that it has no documents responsive to the request for "receipts" because it "does not generate or store receipts in the literal sense." (*Id.* at 3-4.) That is, from the transactions at the Store that occurred with a Fleet One card, Fleet One has electronic "records about" the transaction (including date, time, account number, truck number, etc.), but no information that could be classified as a "receipt" and, for purposes of this litigation, no information about whether the Pilot clerk provided the customer with a receipt, let alone a receipt with the full card number on it. (*Id.*) In requesting "any and all receipts, whether in paper or electronic format, regarding transactions of any and all companies purchasing any type of products from [the Store ] from June 24, 2007 through June 30, 2007," the subpoena is, in essence, asking for the records that Fleet One has from transactions that occurred at the Store during the relevant time period. Fleet One concedes that it has such records, and, therefore, this "no receipts" argument is without merit.

5

(*Id.* at 6-8.) Disclosing this information to the plaintiff would, Fleet One maintains, be akin to disclosing its propriety and closely guarded "customer list." (*Id.*) Moreover, the damage from disclosure of the "customer list" in litigation would be especially pronounced here, as the litigation involves Pilot, a direct competitor of Fleet One in the "fleet card" industry. (*Id.* citing *e.g. Allen*, 190 F.R.D. at 526 for the proposition that "courts have presumed that disclosure to a competitor is more harmful than disclosure to a non-competitor.")

Fleet One also maintains that the plaintiff cannot meet his burden to show "substantial need" for the confidential information or "undue hardship" that requires production from Fleet One. (*Id.* at 8.) First, Fleet One's research into its records has shown that, of the "over 400 transactions at the Pilot location during the 6-day period specified in the subpoena," only 11 transactions were carried out by (9) customers who are not "corporate entities," and, therefore, are viable class members. (*Id.* at 9.) And, again, "plaintiff would not be able to tell whether Pilot delivered a receipt to the customer in any transactions," let alone what information the receipt contained.[3] (*Id.*)

In his reply, the plaintiff first maintains that Fleet One's confidentiality concerns are overstated, reiterating that he is "agreeable to entering into a reasonable protective order to safeguard the confidentiality" of the information at issue and to limit its use to this litigation. (Docket No. 11 at 5.) Also, while Pilot is a competitor of Fleet One, this is not, Gist argues, a

---

[3]The best this discovery could provide, then, would be a "list of fleet companies" for the plaintiff "to comb through to find consumers so he can then contact them and determine whether they received a [problematic] receipt." (*Id.* at 10.) Fleet One contends, and the court agrees, that there are much easier and less intrusive ways for the plaintiff to "otherwise meet" this discovery need, including by locating Pilot's customers in discovery from Pilot, or consulting a membership directory for a trade association of owner-operated fleets. (*Id.*)

6

scenario in which a competitor would be obtaining information that it would be otherwise unable to obtain, given that all of the relevant transactions occurred at a Pilot store, and, therefore, Pilot already had access to all of the relevant information. (*Id*. at 5-6.)

As to need, the plaintiff argues that Fleet One, at least, has information on nine potential class members – that is, nine non-corporate customers who entered into a transaction at the Store during the relevant time period. (*Id.* at 7.) While Fleet One's customer information may not indicate that a receipt was provided, Pilot's witnesses have already testified in the underlying proceedings as to which customers would have received receipts and which receipts would have had the full account number on them. (*Id.*.) Therefore, this "readily available" information will allow the plaintiff to see if these 9 customers are potential class members, and the court should permit discovery that promotes the "most efficient means" for getting the information. (*Id.* at 8.)

In a footnote, the plaintiff recognizes Fleet One's position that the vast majority of the transactions at the Store for which Fleet One has information involved corporations not eligible to be class members. (*Id.* at 6.) However, the plaintiff claims that he is "hesitant to blindly accept Fleet One's assertions regarding the number of 'relevant' transactions or who it deems qualifies as a 'consumer' under FACTA. Accordingly, Plaintiff seeks the data specifically requested in the subpoena, which includes all documents concerning all transactions at the [Store] during the relevant time period." (*Id*.)

### C. Resolution

No compelling argument has been advanced by Fleet One as to why its corporate

7

representative cannot appear for deposition to discuss the matters addressed in the subpoena, which appear to largely focus on Fleet One's record retention and storage practices. In the absence of any justification for not having the deposition, the court will grant this aspect of the plaintiff's Motion to Compel, with the expectation that the deposition will be scheduled by agreement and that the plaintiff will promptly pay all mileage and other required fees.

As to the document request for all information "regarding transactions of any and all companies purchasing any type of products from [the Store] from June 24, 2007 through June 30, 2007," it is clear that at least some of this information is "relevant" under the broad discovery rules because it "appears reasonably calculated to lead to the discovery of admissible evidence." That is, a small amount of the information will provide potentially identifying information about non-corporate entities that used fleet cards and, therefore, likely obtained a "problematic" receipt during the relevant time period.

The court also has limited confidentiality concerns as to disclosing the information surrounding these 11 transactions. Disclosing this relatively small amount of information about individual transactions over a short period of time does not implicate broader concerns that Fleet One is turning over its hard-earned "customer list." Indeed, in e-mails previously filed with the court, Fleet One offered to disclose this information to the plaintiff so long as a "suitable protective order [was] in place" and there was redaction of "commercially sensitive . . . information that is not relevant to [this] case." (Docket No. 7 Ex. 1 at 1-2.) The plaintiff refused this request, again, simply declining to trust Fleet One that it competently ferreted out individual versus corporate transactions. (*Id.*) However, the plaintiff did agree to enter into a

8

"reasonable protective order" and redaction of "unnecessary information" so long as the disclosure was of desired breadth. (*Id*.)

Therefore, the court will order the disclosure of the information surrounding these 11 transactions. In the absence of information on how the individual records are structured, the court is not in the position to craft a protective order or redaction guidelines. However, it appears that the parties are willing to work together to redact and protect confidential information as necessary. However, if the disclosure has not been made within 21 days from the date of this Memorandum and Order, the parties are to file a Joint Status Report explaining any delays and appraising the court whether further assistance from the court will be required as to this issue.

As to the remaining materials, the dispute simply seems to boil down to a lack of trust. That is, Judge Caldwell's clear ruling was that a corporate entity that received a "problematic" receipt was not eligible to participate in this case as a class member. In light of that ruling, there appears to be essentially no relevance to the files that Fleet One has regarding corporate purchases at the Store during the relevant time period, and, in its Reply, the plaintiff does not dispute this. Rather, the plaintiff simply states that he should not have to "blindly accept" Fleet One's representations regarding the volume of corporate purchases.

There is, however, no reason to believe that Fleet One conducted its investigation in bad faith or that it was motivated by any desire other than to protect its business records from unnecessary disclosure. Fleet One appears to have conducted a reasonable and thorough investigation of its records, and it is not the place of the court, solely based on the plaintiff's

9

unsupported mistrust, to order Fleet One to turn over records that, if Fleet One is believed, would have essentially no relevance in this case.  Therefore, as to the remainder of the documents, the plaintiff's Motion to Compel will be denied.

The plaintiff's Motion to Compel (Docket No. 1) is **GRANTED IN PART AND DENIED IN PART** as fully described herein.

It is so Ordered

Enter this 12th day of September 2011.

ALETA A. TRAUGER
U.S. DISTRICT COURT JUDGE